Here ye, here ye, the Honorable Appellate Court of the 2nd Judicial District is now open. The Honorable Susan F. Hutchinson presiding. Please be seated. Your Honors, the only case you will adopt this morning is 2-24-0658, honoring the marriage of Jennifer Dalzell, the position of plaintiff, and Steven Dalzell, the responding appellant. Arguing will be the appellant, Mr. Michael G. DiDomenico. Arguing will be the appellant, Mr. Jane J. Moyser. All right, good morning, counsel. Mr. DiDomenico, if you're ready, you may proceed. Justice Hutchinson, and may it please the Court. This is a child support enforcement case with a very odd disposition. Here, the child support abogee and sole custodial parent, Mr. Dalzell, my client, had his petitions to enforce the disillusioned judgment as to certain uncovered, the allocation of certain uncovered expenses for one of the parties, the party's remaining minor child, denied on a directive finding. Not a disposition that this Court will see too often. You're calling it a petition to enforce? It was a petition. It was a contempt petition. Thank you. It was a petition for religious cause. And I think that that's one of the issues in the case about whether a contempt petition can be construed as an enforcement petition. And this is coming to us on a 304A, because at the time there were two other matters still in your petition, or in the petition. That's right. The notice of appeal was filed before I got in the case. I noticed the defect. I got the 304A finding to perfect jurisdiction here. On July 31st of 2023, after you had already filed the first contempt petition, you moved to modify the disillusioned judgment, arguing that you and the petitioner had not previously contemplated how to allocate costs for the children's special medical, mental health, or emotional needs. So what was the purpose of that petition if paragraph E already covered medical costs such as those currently incurred by CT? What was the point of that motion to modify? And you could also address in the same answer why the concession by counsel in the trial court that the provision was ambiguous is not binding. That's an element that you had to prove. You had to prove the element that this is a clear and concise order that is unambiguous. It's an element, right? It is, at least for contempt, because if there's an ambiguous judgment, there can be no contempt. I concede that. As for the motion to modify, all I can say is I wasn't trial counsel. I believe we ended up or they ended up entering an order withdrawing that motion. I do think it's inconsistent with the petition to enforce the judgment. I don't have a good answer as to why that was filed in the first instance, but I think it was ultimately withdrawn when I got this case and we ended up taking the appeal and the enforcement. The judge's finding about ambiguity, at least in my view, wasn't fully vetted out, wasn't fully explained. The way I read paragraph E, which is the paragraph at issue here, sentence 1 creates the obligation, allocates the expense 60, allocates the obligation for uncovered expenses 64. There's nothing ambiguous about that. The issue is what do we do with the rest of the sentences in the paragraph, which are what I'll call the notice and forfeiture provisions, which is a 14-day notice requirement for my client to give notice of the incurrence of these expenses. As a threshold, I have a few things to suggest to the court. Again, the obligation is 60-40. Does the compliance with the notice and forfeiture provisions, if it's even valid and enforceable, and I raise the threshold issue as to that, but are the notice and forfeiture provisions even, do they operate to render the obligation itself ambiguous or do they create a possible defense to payment? Because the judge here found that the obligation was ambiguous because, seemingly because of these notice and forfeiture provisions. He said it could be read multiple ways. Was I wrong about that? Because I've read it several times and it can be read multiple ways. I'm suggesting that you can't read 60-40 any other way. The obligation is 60-40. Well, with respect to what is covered and not covered, it's ambiguous, clearly. The 60-40 obligation is an allocation of all uncovered medical expenses. The limiting sentences don't come until later, and those are the notice and forfeiture provision. That's what I'm suggesting would be more the nature of a defense than to render the obligation itself ambiguous. Let me ask you this question. In page 17 of your brief paragraph, you argue that paragraph E unambiguously requires repayment. Then you go on to contend that it's, quote, questionable whether the notice provision, which could result in forfeiture of Stephen's right to reimbursement, is even implicated on these facts. So if it's questionable whether the operative portion of the judgment applies, how can it be considered unambiguous? How could we consider it unambiguous when you basically say the same thing that it's questionable whether it even applies? It's questionable whether the notice and forfeiture provisions apply to act as a defense to the obligation itself. That's the distinction I'm trying to make. The obligation is 60-40. No one can say that's ambiguous. Whether these other sentences operate as a defense to the payment is a different issue. I don't see how the later sentences render the first sentence ambiguous. Again, it might create a defense. But, again, what I've asked the Court to think about — What do the notice provisions apply to? Well, it's an interesting question because it's frameworked. Is that confusion? The notice provision? Yes. Yes. I don't think that there's any question about if the notice and forfeiture provisions are poorly drafted and unclear. But whether, again, whether that's a defense or renders the obligation itself ambiguous I think is one of the questions before the Court. But I raise a special question whether the notice and forfeiture provisions are even enforceable. You know, what these provisions effectively call for, as I say in the brief — But is it — and I reviewed that, and I read some of those cases, et cetera. But the forfeiture provision says may imperil. I beg your pardon? Excuse me. The forfeiture provision says may imperil, doesn't it? Yes. So, I mean, it's hardly a forfeiture. Well, to the extent that the other side of this case is — I mean, imperil in and of itself isn't black or white. But to add the may to it, certainly the whole thing is it's like, you know, hey, it could be a problem. But it isn't saying it's a forfeiture. So I don't see that as being — I really don't. I also read these things a little more literally than you apparently do. Because the forfeiture provisions, as I see them, apply to extraordinary medical expenses. But I guess even just looking at E, you know, you say, well, it's just obvious. It's 60-40. You know, that's it. Take it to the bank and, by the way, hold her in contempt. But it's all ordinary, extraordinary medical, dental, psychological, vision, optical, prescription, orthodontic, not covered by insurance. That's what it applies to. So my concern with your endeavor to undo this ruling is, does that apply to the ambulance expenses? Does that apply to the outdoor recreation? Does that apply to education? As, you know, Justice Burkett put it for you, very simply, it's an element of the complaint. You're a complaint for contempt. Okay. And I see that as an issue, if that is helpful to you in your argument today. I think I understand what you're saying. But I want to back up about what's before the court, okay? The judge below construed, effectively held, that his hands were tied to only, is either contempt or nothing here. Because there's a petition for rule of show laws. I see that as a second issue. Okay. And you read your wherefore clause very broadly. Correct. But I think I also understood you wanted the, you were upset with the contempt ruling. You think this rule is clear, excuse me, you think this provision is clear, and you're asking us under 366.85 to simply impose this obligation. With or without contempt. I'm asking for either a simple enforcement order and or, you know, a contempt, at least a reversal of the decision that there was not a prima facie showing of contempt. And or in the alternative. Because I'm trying to eliminate unnecessary expenses and more litigation below. The rule here was there's no prima facie showing of contempt because the judgment is ambiguous as to this obligation. In my view, sentence one is not ambiguous. It's unambiguous. It's a 64-year allocation. There's no dispute that she hasn't paid this. There's no dispute as to ordinary and extraordinary medical, there's an obligation there. Dental, psych, vision optical, prescription, orthodontic. Correct. So whether you want to call the expenses incurred at Alexian Brothers and the various inpatient treatment centers as a medical expense, a psychological expense, or whichever other bucket you want to fit it under that catches the first sentence, that's the obligation. The only times that those, the later sentences pick it apart is in the notice and forfeiture provisions. The first paragraph E says, as you were reading, all extraordinary, ordinary, medical, dental, psychological, prescription, orthodontic. So whether you want to characterize the Alexian Brothers and all the inpatient treatment as medical or psychological, 60-40 is the obligation. Period. You still have to break down what is within those bills medical, what is educational, what is the camp counselor, what is all these other activities that were part of the treatment, which are, you know, those are clearly not medical. How do we break it down? How would we enforce the order? There's no question what the expenses were. Build for tuition, for example. That's beyond that perspective. I know you addressed that in your brief, but there is a point to be made that you're asking us to enforce an order that is, based upon the record, ambiguous. We don't know what is or is not. And the other thing is there was no compliance with the 14-day notice requirement. Correct? I don't agree with that, Your Honor. No. Which there was, I think, there was once when he complied. That may be correct, but on these facts, as I say in the brief, as I argue in the brief, you know, how is he supposed to comply with the 14-day requirement under the circumstances presented here? Through communication. Which is what he did. And he communicated after the fact with Jennifer. I think it was as contemporaneous as he could get, as his son was being ushered around from treatment center to treatment center when he was suiciding. Yes, Your Honor. I think that, you know, again, I rely on the substantial performance doctrine because this kid, you know, we went from the emergency room at Alexian Brothers because of a suicide attempt to following the doctor's advice to the first treatment center. He was kicked out of there because he made another suicidal attempt, suicide attempt, or was taking actions in that regard. Gets immediately shipped off with very little notice to turn around and find somewhere else. Finds a new place, and that place has to close for economic reasons. Then ends up at KW Ranch, which was the last place. Every step of the way, he didn't have, the facturer didn't permit him to give 14-day notice. But whatever notice he could give, he did. I don't know what else you expect a father to do under these circumstances when you have a child in this kind of peril, right? And I don't believe that this dissolution judgment was crafted by a judge to enable, you know, a noncustodial parent to skate out of an obligation to pay nothing for their child. There's no question that these expenses were incurred all relative to this child's treatment at these various facilities. They don't even dispute that. There's no dispute about the amount. There's no dispute that the invoices that were put into the record are phony or not true. They brought the people, half the people, the therapists and the people who advised my client to go to these different places, they all testified. There's no dispute that all of this was tied to this child's care. Now, whether you file under medical or psychological, she had an obligation to pay. And he did everything he could under these facts to alert her. And she took no action. In my view, this is, he had sole decision-making. In my view, the defense here is really an attempt to collaterally attack his sole decision-making authority. He had the right to make these decisions. He kept her informed. She didn't have an alternative plan. She said, send the kid home. Well, there is another ambiguity that I'm having problems with. The recommendation, I think, at the next to last location that had to close quickly was, or one of them was, he needed to go to a wilderness program. Correct. What is a wilderness program? How is that medical? How is that psychological? How is that, that's riding horses and working on a ranch. How, there's another question I'm going to ask after you answer this, but that's where I'm having problems. That's the diagnosis of a doctor, a wilderness program? I can't find that on DSM-5 or any of those locations. Here's what the testimony was. The testimony was that the director at Turnbridge recommended he go to attend wilderness therapy because traditional counseling was not effective for him, right? So the person who was observing at Turnbridge said, we've got to try something different. This isn't working. Okay? And I think that's a fair response when we had to leave the other facility because he was drinking something he shouldn't have been drinking. He took action to take his own life. And the record is clear that all my client was doing was following the advice of the professionals, whether they were the social workers at these various facilities, whether people he separately employed to advise what was best for his son. What more is the guy supposed to do? Again, you go back to the ambiguity in the court's order. It was an agreed upon allocation judgment, correct? No. It was drafted by the judge. Judge Harmon crafted this order? I believe, yeah. It was not a marital settlement agreement. The case was tried, wasn't it? Yes, ma'am. And this was a product of the judge's writing, which surprised me too, frankly, because this is usually, you know, this is writing you typically see. Well, he wrote a memo in anticipation of the judgment, or he had some written. So they knew what was going to be in there, and they obviously could have some hearings on that issue and question some of the issues. But at the time, they really didn't do that, did they? No. There was no appeal taken? Well, I'm not worried about an appeal, but I'm saying after that order, after the judgment was prepared and Judge Harmon was ready to sign it, they could have and probably did object to certain conditions, and he made certain changes, or didn't they? I have to go back and look. Honestly, it wasn't several years ago, and I wasn't part of this case then. All I know is what the judgment says now, and I know it wasn't a marital settlement agreement. Right. Whoever wrote it, it's nobody's best work, clearly. But I don't think that anybody anticipated this set of circumstances, nor could they, where the child had to be shipped around in order to save his life effectively to get him from one treatment center to another. You know, the problems that the child had, and you articulate it well, it's compelling, but that does not get around the fact that the order itself was ambiguous.  And nothing prevented Stephen from filing an enforcement, a motion to enforce the order. He did file an enforcement petition. That's called a contempt petition. That should go forward with a 304A appeal here. As I alluded to in the brief, I was a little bit scared of res judicata, because frankly, I know of no case that supports the judge's ruling here. My friend on the other side certainly hasn't cited any. That a contempt petition isn't an enforcement petition. Yeah, and we're sensitive to the issues that brought us all back to court. You know, there's a child here. But your petition, you could have sought, brought this to the attention of the court, and then sought her participation in the expenses of this through a modification of support. As support, there were other petitions available to you, but what's here in front of us, and what the judge ruled on, is a contempt petition. And it's tied to, and I see paragraph A says Ms. Johnson be required to reimburse. But the petition is tied to paragraph E. And the judge clearly said, well, maybe, Crystal got as clear as I'm going to make it, but he certainly expressed discomfort with there being sufficient notice that these sorts of expenses were going to, how they were going to be divided amongst the parties. It's clear to me as I read the judge's oral ruling, that he didn't think this issue was presented sharply enough in the pleadings in your rule to show cause. Maybe you didn't see it that way, and maybe that's why you're here, instead of using other mechanisms. I'm not sure what other mechanisms he was required to use. The dissolution judgment says these expenses are allocated. Reimburse pursuant to which paragraph of the judgment. You tied the whole rule to paragraph E. Correct. Because that's what allocates the expenses. There's no other provision of the judgment that applies. But as Justice Burkett pointed out, you just handed over the big bill, which includes things that are arguably not medical or psychological. And Justice Hutchinson made that point as well. I didn't understand it in my opponent to be disputing that the expenses, and I didn't understand from any of the arguments below that they're not medical expenses. There was a reference to the labeling of the invoice from one of the vendors as tuition, but that isn't dispositive. That's why they called all the treaters and the social workers in to say what this was incurred for. Is it in the nature of education? I don't think trying to remedy a suicidal child is education. I think it's psychological and or medical. And frankly, going back to your Honor's question or point about filing something else or approaching this in a different way, it might be Mr. Daldo had the right to rely on his dissolution judgment that said 60-40. We can debate whether or not the notice and forfeiture provisions render it ambiguous. I don't know what else you call these expenses except medical and or psychological. And therefore, that's the allegation. I don't accept the premise that the judge's hands were tied by way of this petition, that he could not move forward to simply enforce this and we had to direct out on the contempt finding. No case supports that. They don't cite any case. The judge didn't cite any case. Going back to the time of like, you know, when Lennon was reading books of Marx, right, you look at the substance of the petition, not the form, not what it's called. It was an enforcement petition like every contempt petition is. But there is another phrase here that would help us to understand these bills, and it lists all of the possible medical or psychological issues, but then says that they're not covered by insurance. Where is tuition covered by insurance? Where is tuition covered by insurance? Yeah. I don't believe that this applies to tuition. Well, we have to use that phrase as well. It's not that, you know, every phrase, I mean, we have to look at every phrase as meaning something. Otherwise, we come up with absurd results. And here it does say that these, they'll contribute to these expenses in a certain way that are not covered by insurance. So we have a tuition note that doesn't seem to be covered by insurance, at least any of the insurance that's identified here, because it seems to be all of a medical nature. We don't, the ambulance might be medical, might not be. I mean, there's, that might be questionable. But I think the issue is, and I think Justice Mullen has made it and Justice Burkett has made it, that we have kind of a big petition that it does not come down to specific points that needed to be covered. And that created the ambiguity, or that was maybe because of the ambiguity, but is still an issue as we are listening to you argue today by our questions. Well, perhaps, maybe that's why the trial should have been finished and the judge should have heard the rest of the evidence and heard the closing arguments on the merits of the petition, rather than just ending the case on the theory that I can't enforce the judgment because all you gave me is a contempt petition, which is really, really was only the thing before you, okay? Because that, this was a directed finding, right? Step one, he said no prima facie case because it's ambiguous. But if the judgment is ambiguous, that only means there can't be contempt. That doesn't mean there can't be enforcement. The judge all but said he was going to enforce it at the end. So the premise of the judgment here is that the judge's hands were tied because there needed to be another petition, but there didn't. And therefore, there didn't need to be a directed finding here, and it should be reversed. All right. Justice Burkett? Justice Mullen? All right. Sir, you'll have an opportunity to reply if you wish to. All right. Mr. Lorzo? Good morning, Your Honors. Good morning, Mr. Court. I'm sorry. Your Honors, I think that there's three main areas of analysis here, and I think we've touched on them already. But the way I look at this is that we start with the premise of this was pled as a petition for contempt. So we have three petitions for contempt. All three of them are nearly identical. So when we look simply at that, at trial, trial counsel conceded that the judgment that they were using as the basis for the contempt was ambiguous. Trial counsel agreed with me, and that was my point in my argument, and that was my point in my cross-examination of their witnesses, is that that judgment, those terms are very difficult to parse. And as we know, in order to properly plead and set forth a finding of contempt or a showing of contempt, first we need an order or a judgment that is clear and unambiguous and susceptible only to one reasonable interpretation. And as I told Judge Zalit in the trial court, I've probably read that paragraph in the course of this litigation 50 times, and I cannot make heads or tails of what some of those provisions mean. Taking it step by step, we have a 60-40 where it talks about extraordinary and ordinary expenses. It defines extraordinary expenses, but it leaves ordinary expenses undefined. There's a provision that talks about uncovered by insurance. We then have, later in the paragraph, early on we talk about things that are left out later. The later portion of the paragraph E, of a failure of the party to provide notification prior to incurring extraordinary medical, dental, or optical expenses. But earlier in the paragraph, there's a more exhaustive list of medical, dental, optical. So right there, we have some ambiguity. We then have the ambiguity just in the plain phrasing of the notice provision. It's 14 days, and it specifically says, within 14 days prior. So which is it? Is it 14 days, you have to do it, give two weeks notice? Or is it sometime within the 14 days leading up to when you would incur an expense? But one way or another, I think that gets more to the merits of whether or not there's actually reimbursement that would even be owed under the terms of this judgment. Because when we're looking at it strictly from the standpoint of, this was a contempt petition.  Yes. It gets to the merits, so there's a forfeiture. Is that it? Because there was a forfeiture here, it gets to the merits you never would have owed because you forfeited it. No, I don't. Which leads me back to my question that I gave to your opposing counsel. The forfeiture provision says, may in peril. And I think, Justice Malone, that's where we get into, if you look at the record, and you look at the evidence that went before the trial court, I think that that is essentially ceding counsel's argument. I'm not doing that. But if we take his argument to his logical extension, which is, a petition for contempt is essentially fully interchangeable with a motion for enforcement. I disagree with that premise. I think that they are — I don't believe that a motion to enforce is essentially a — I don't mean to interrupt you, but it seems like you've taken either a left or a right turn from my question, which was, you said, well, this deals with the merits, or you made an allusion to the merits, which made me think, oh, you're saying there's a forfeiture here because he didn't give us the proper notice. I mean — So that's a good reason to affirm, because he forfeited. Well, that's — That's what I understood you to say, and perhaps I missed it. Sure. And as I started just mulling, I think that there's three ways of looking at this. And the first is just simply, when I say on the merits, I mean on a petition for contempt. And if there's a concession by both parties that the judgment or the underlying order is ambiguous, I think the judge at the trial court has no other option other than to grant — Okay. But when you threw in a bit about the forfeiture provision, I assume that had something to do with it. And I just don't see how there's much value in speaking of the forfeiture provision, one, of this procedural posture, and two, since it says me in peril. I think that — I think you do, so let me let you go on. You're very anxious to speak. Oh, no. I'm sorry. I didn't mean to interrupt you, Justice. I was trying to answer your question. I thought I was — thought I'm sorry for that. My point is, is that the forfeiture provision, in and of itself, is ambiguous. Because I don't — But again, what difference does it make here? Does it make a difference here? It makes a difference if there was — you contend there was a forfeiture, and that's why the trial court gave a directed finding. Under those terms, it does not make a difference. Because once the trial court has found that the underlying judgment is ambiguous, I think it ends there. And I think that's why the directed finding was appropriate. Because Stephen was not able to demonstrate a prima facie showing in his face or his portion of the hearing that there was a clear and unambiguous court order. So all of those things in the paragraph in the judgment, taken together, renders it ambiguous. And therefore, I think that, quite frankly, I think the analysis could stop there, and Judge Zeller, the trial court could be affirmed on that basis. Only with respect to the contempt, without addressing the alternative argument of enforcement. That is correct, Justice Burkett. Could we invoke our authority under Rule 366? I don't believe so, because there's a couple problems there. So the first is that if we're looking at the specific language of the judgment, as I started to indicate, I don't think that an enforcement petition or a motion for enforcement is essentially interchangeable with a petition for contempt. While they may both seek enforcement, they do it in different ways, and there's different procedural requirements and there's different pleading requirements. In a petition for contempt, we have, very specifically, we have to first demonstrate a prima facie showing. Once that's done, the burden shifts to the alleged contemnor that we now have to demonstrate, that contemnor has to demonstrate why or show cause why they should not be adjudicated in contempt. A petition for enforcement or a motion for enforcement, I don't believe, follows that. So my understanding of the case law on enforcement petitions or enforcement motions, essentially, it almost sounds like a declaratory action. It's not, but my understanding of the case law is that a party requesting a determination of rights and obligations under the judgment would be enforcement, or enforcing rights and obligations that are clearly laid out in the judgment. So we're still going to have the same problem of clearly laid out in the judgment. And I would also add to that, that this judgment. It's clearly laid out in the judgment. I don't mean to interrupt you, but the 60-40 breakdown is clearly laid out. And there's no question that this child had psychological issues that were alarming, suicidal, stealing, disrupting. All of those are tied to his mental health. The provision, paragraph B, makes reference to psychological costs, but those costs are omitted from the notice provision. Wouldn't this suggest that the costs incurred for psychological expenses are not subject to the notice requirement? If it's found to be an emergency wherein delay would imperil the child. And I think the argument was made. I hear delay. I mean, isn't it clear from the record that he had to make, that Stephen had to make some important decisions? I would disagree with the premise that he did have to make this decision, because if you look at the record, what happened, there's no question, this was a young man that needed intervention. This was a young man that was struggling. But he got the help he needed at an actual medical facility. So if you look at the timeline in the record, what happened was, there were suicidal ideations by the young man made to a counselor. The counselor then took steps to say, this young man needs an intervention. He was brought on an emergency basis to Alexian Brothers. He was inpatient for, I believe it was about two weeks. Jennifer paid her portion of that bill. That was medically necessary. That was emergent. Contemporaneous notes from Dr. Reza, who was the treating physician at Alexian Brothers, as well as Mr. Dudink, and their testimony was had at the trial court, both acknowledged. Dr. Reza, after two weeks, said, the young man has stabilized. He no longer has suicidal ideation, and he can return home. That was her recommendation contemporaneously. So he had an emergent situation. That situation, through counseling and through medication, was resolved. The recommendation of the doctor and Mr. Dudink was he can go home. Steven, with all due respect, that is the merits of, I guess, the dad's decision-making and perhaps mom's need to contribute to the expenses. But the judge never reached that. We never reached that, Justice, because? He didn't say, this was all unnecessary, that's why mom didn't need to pay, and that's why I'm directing the contempt out. We never got there. You're correct. And so you're saying to us, well, look, you know, this was not necessary. The doctor said, he can go home. And so there's no problem here. I don't see that issue before us. I don't see it presented to the trial court. I don't see how it's helpful. And I only raise that because in counsel's brief, that was brought up as to why this is so, this is essentially black and white in trying to answer Justice Burkett's question, why shouldn't your honors simply grant the relief sought? And that's what I'm saying is that's why that relief should not be sought. Because they've asked for it doesn't mean that the underlying judgment is clear. For example, almost all of the bills, I'm not saying all of them, but almost all of the bills that are disputed are labeled as tuition. And I think that words have meaning. And I don't think that we can simply hand wave away. But if dad has sole decision-making authority, then mom could be asked to contribute to education that this child needs. I would actually disagree with that pursuant to the judgment, Justice Mullen, because there is a provision in the judgment that deals with educational expenses. And it does not cover tuition. It covers registration expenses and other certainly delineated. If the kid's needs change, the judge can't change it? When I left divorce, a judge had the power to modify support obligations. I would agree with you that that. Thank you, counsel. I would agree with you that that provision can be modified. Yes, I read paragraph G. Yes. And no, it doesn't talk about tuition. But that doesn't mean it could never be the obligation of the noncustodial parent. I absolutely agree with you. But I think that the method to do that would be to file a petition for modification under 510 and bring it in and say there's been a change in circumstances. We now need to modify the provision regarding payment of tuition or school. I don't think that asking for a petition for contempt for payment would be tantamount to a modification. So there are certainly provisions and there are certainly ways to address that and to say that we can modify the tuition provision or the lack of tuition provision. But it's not there now. So if you're going to try to hold Jennifer in contempt, if they're going to try to hold Jennifer in contempt, I think it has to be based on what's in there in the judgment, not what could potentially be in the judgment. So that's why when I look at the judgment itself, and that's why I say we didn't get there in the trial court. We didn't get there on the merits. However, if we did, and as Justice Burkett asked me, could that judgment be entered or could there be a finding that money is owed, I don't believe that there would be or that there could be under both the terms of the judgment itself as well as the underlying facts that came out during their case in chief. Because medical expenses were not, actual medical expenses, such as Blue Cross Blue Shield covering Alexian Brothers and then uncovered, those were paid. What we're talking about is an election to send a child who quite frankly was in crisis and sending him halfway across the country to a facility and then sending him halfway across the country the other way to a wilderness where he works as a ranch hand and he has to be out, and I don't want to get into the specific details, but the record is replete with it did not seem to indicate that he was receiving medical treatment. He was going to essentially a boarding school where he was working as a ranch hand and they had a counselor available. To me, that is not medical expenses as defined in the judgment. Taking it a step further, the institutions themselves don't say this is for medical. This is tuition. They send tuition bills. So from that standpoint, I don't believe even with father having sole decision making, I don't know that that gives him essentially a blank check to simply say, I incurred $13,000 a month for tuition. Here's a bill. Pay me $140,000. And if you don't, now I'm going to ask that you be held in contempt. Because that's essentially the tap that Stephen took here. I think that there were any multiple ways that this could have been addressed. He could have pled in the alternative. And I think one of the cases that I cited in our brief, it costs you nothing as a litigant to plead in the alternative. He very well could have pled a petition for contempt or in the alternative for enforcement. But I don't think that a petition for contempt is a vehicle to simply say, well, I got close but not close enough. So as a consolation prize, just tell me money is owed or just say money is owed. Because I don't think that that is one and the same. I don't think they're interchangeable. Just as I disagree with counsel that I don't think that because something is called tuition, that we have to ignore the plain language of that bill and simply say, well, we all know it's really medical expenses even though it's not billed as that. That's my problem with doing it the way that they've attempted to do it. So getting back to the actual contempt itself. You can go ahead and finish your thought. Getting back to the contempt itself, I do believe that the trial court should be affirmed because I don't think that there was any reason or any other reasonable outcome that the trial court could have come to other than issuing the directed finding, making the directed finding because of the ambiguity. That was, quite frankly, conceded by trial counsel and argued by myself. So I would thank Your Honors. Justice Burkett? No. Justice Mulla? No. Thank you. Thank you, Mr. Mullis. Thank you. Mr. DiDomenico. You know, listening to counsel, you'd think that Ms. Dahl's not going to pay anything. I don't think that was the intention of this judgment. It's not the intention of any dissolution judgment that allocates expenses for minor children at a time of a divorce. But what you just heard was it can't be in contempt and it can't be enforced either because it's ambiguous, and they don't have to pay tuition either. What do you have to pay? The suggestion that he should have moved to, Mr. Dalzell should have moved to modify this obligation to catch how the court would later construe these expenses, this was all going on. I mean, this kid was in crisis. He's going from facility to facility. I don't think it occurred to Mr. Dalzell that he should have had to move to modify his obligation, the dissolution judgment, to account for these expenses because later on it might be determined that it didn't count as medical or psychological expenses. You can only get relief to the time you file. So it would have been a moot point anyway. There would be nothing for him to modify because the expenses would have already been incurred. I come to this as well, and I agree. A lot of what counsel says, as I said the first time around, is sort of impeaching Mr. Dalzell's decision-making authority. He has sole decision-making authority by agreement of these parties. Again, to try to recharacterize these expenses, the evidence is clear. Mr. Dalzell was not some rogue actor here, like sending this kid around the country, doing AI searches or looking around on Google. He hired professionals. He listened to the social workers at all of these facilities. He didn't come up with these ideas. He was told where to go by the professionals who treat kids like this, who help kids like this. The interesting question is, though, at least in my mind, having done a fair amount of divorce in previous days, You're missed. did he ever show this particular provision, this judgment to these professionals so they know what they had to deal with and how they had to define it? What it sounds like from the evidence is the definitions provided by the witnesses or the ideas presented by the witnesses don't fit into this section that you have cited. They may fit into enforcement, but I'm not going to get into the enforcement versus contempt issue. I'm talking about just, you know, you want him to say ABC, you show him ABC. Is there any reference in this record to the fact that these experts that he hired, and I appreciate that he did, knew what they were talking about when it came to this judgment? I don't believe there's anything in the record that shows that they were shown the judgment or asked to interpret it. Justice Hutchinson, the way I view all the testimony from the different experts, from the social workers that came in, is all of this was designed for a singular purpose, which was to make this kid better, get this kid better. Whether you want to call that medical or psychological, it was all of this, all of these decisions, all of this plan, all of this treatment was toward one ultimate medical goal, make this kid better. What more is the man supposed to do but rely on his dissolution judgment in that regard and say 60-40, you're the mom, you're supposed to pay 48% of all expenses uncovered by insurance? Okay. Well, there's a term in here that's bothered me from the beginning, and it's well-being. Did anybody, it's in, I think it's an extraordinary expense, well-being. They don't say psychological. They don't say psychiatric. They say well-being. Did anybody use that phrase in their testimony, that this was for the well-being of this child? This placement was for the well-being of this child. Would have helped, but was it ever said that way? Not knowing the testimony verbatim, I could swear to it, but I don't know if it was ever put in those terms. But, again, if the idea here was to emerge the kid out of suicidal ideations and suicide attempts, I don't know what else you would call the treatment plan put in place other than for his well-being. Well-being being like let's keep the kid alive and keep the kid, you know, try to get the kid healthy. If that isn't something here for us. Well, if that was a catch-all term, then maybe somebody should have used it that way. But, frankly, I don't recall that anybody did. Okay. Well, again, given the posture, the procedural posture of the case, that my side is out on a directed finding for not even proving up a prima facie case, either for contempt or enforcement. Again, these are questions that seemingly trend toward the rest of this case that they should hear on remand and let the judge finish this. I'm not going to belabor the point about contempt versus enforcement petition. My position is clear in the briefs. I don't view that. I don't view a judge's hands being tied in a child support case in the way the counsel suggests. I don't believe the case law suggests that either. In that regard, I don't have anything further, unless Your Honors do. Just forget? I'll be done and set out. You know, I do like happy endings, and I'll talk outside the record for what this kid's doing good. And regardless of how we turn out here, this kid's doing pretty good this week. Thank you. Thank you. Thank you. Counsel, we will take this matter under advisement, and we will render a decision. And, of course, we do appreciate your argument this morning. And I think it goes without saying that there isn't any one of this panel who does not understand and appreciate the problem that the child was having. This was a legal issue. It wasn't an emotional issue in that regard. So we will now stand adjourned, and have a good day.